Charles F. Goodwin and Jennie Goodwin v. Commissioner.
Goodwin v. Commissioner
Docket Nos. 3344, 3343.
United States Tax Court
1944 Tax Ct. Memo LEXIS 89; 3 T.C.M. (CCH) 1080; T.C.M. (RIA) 44321; October 9, 1944
*89 Allan Pretzman, Esq., for the petitioners. John H. Pigg, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: These proceedings have been consolidated for hearing. In Docket No. 3343, respondent determined deficiencies in the income tax of petitioner, Jennie Goodwin, for the calendar years 1939 and 1941 of $38.09 and $42.30, respectively. The deficiencies resulted from respondent's determination that Jennie Goodwin was entitled to an earned income credit in the amount of $300 only for each of the taxable years. In her return for 1939, Jennie Goodwin claimed earned income credit in the amount of $1,252.06, and in her return for 1941, she claimed a credit in the amount of $1,357.48. In Docket No. 3344, respondent determined deficiencies in the income tax of petitioner, Charles Goodwin, for the calendar years 1939, 1940, and 1941, as follows: 1939
$35,452.75
1940
44,011.73
1941
46,167.73 The deficiency for the year 1939 results from respondent's determination that the distributive shares of Ernest Goodwin and Frances Goodwin in the net income of the Sunray Stove Company, an alleged partnership, are taxable to petitioner. The deficiencies *90 for the years 1940 and 1941 result from respondent's determination that in each year the distributive share of Frances Goodwin in the net income of the Sunray Stove Company, partnership, is taxable to petitioner. Petitioners, Charles and Jennie Goodwin, reside at Columbus, Ohio. They filed their respective individual income tax returns for the taxable years with the collector for the eleventh district of Ohio. Findings of Fact Petitioners, Charles Goodwin and Jennie Goodwin, were married in the year 1916. They have three daughters: Frances Goodwin Gustafson, born on June 23, 1917; Dorothy Goodwin, born on August 27, 1920; and Ruth Goodwin, born on March 28, 1922. Petitioner Charles Goodwin has been engaged in the manufacture of gas ranges for the past twelve years and has been connected with the stove business generally for the past thirty years. In the year 1917, he commenced work as a salesman and outside service man for The Sunray Stove Company, a corporation engaged in the manufacture and sale of gas ranges. At that time, the stock of the corporation was closely held by five individuals who were not related to the Goodwin family. In 1932, Charles Goodwin acquired 157 shares *91 of common stock of the corporation and, thereafter, he held the positions of general manager in charge of sales, general manager of the shop, and president of the corporation. In 1937, Charles Goodwin owned a total of 480 shares of stock of the corporation. He had purchased additional stock for $100 per share, 80 shares of which he transferred as a gift to his sister, Mrs. Frank Brey. In 1934 and 1936, Jennie Goodwin acquired a total of 399 shares of stock in the corporation. For some of the stock $100 per share was paid. All of the stock was paid for by checks drawn on a joint checking account which she maintained with her husband. Ernest Goodwin, who is the brother of Charles Goodwin, also worked for the corporation for some time prior to 1936. In that year he acquired 273 1/2 shares of the corporate stock and his wife, Lucy Goodwin, acquired 352 1/2 shares of such stock at the price of $100 per share. Of the 273 1/2 shares which Ernest Goodwin purchased, he transferred 173 1/2 shares to his son, Hart Goodwin, as a gift. On June 1, 1937, Frances Goodwin, the daughter of Charles and Jennie Goodwin, acquired the 173 1/2 shares of the corporate stock owned by her cousin, Hart Goodwin, *92 for $100 per share. In payment of this stock, Frances gave Hart Goodwin her note for $17,350, and later paid the note with dividends received on the stock. On August 31, 1937, there were 1,505 outstanding shares of common stock of the corporation, all of which were held as follows: Shares
Charles Goodwin, petitioner
400
Jennie Goodwin, petitioner, and wife of
Charles Goodwin
399
Ernest Goodwin, brother of Charles Good-
win
100
Lucy Goodwin, wife of Ernest Goodwin
352 1/2
Mrs. Frank Brey, sister of Charles and
Ernest Goodwin
80
Frances Goodwin, daughter of petitioners
173 1/2
Total
1,505
On August 31, 1937, Charles, Ernest, and Jennie were the directors of the corporation. The officers consisted of Charles Goodwin, president, Ernest Goodwin, vice-president, and Julius Nocker, secretary and treasurer. The corporate duties of Charles Goodwin consisted largely of looking after purchases and managing the shop. The duties of Ernest Goodwin consisted largely of looking after sales and outside work. The net profits and the dividends of the corporation for the years 1934 to 1941, inclusive, were as follows: Net
Total
Dividends
Year
Profits
Dividends
Per Share
1934
$18,086.52
$ 3,000
$ 2
1935
23,377.84
1,505
1
1936
64,082.70
45,150
30
1937
82,945.53
52,675
35
1938
10,151.47
9,030
6
1939
13,655.04
13,545
9
1940
14,751.71
13,545
9
1941
15,398.92
12,040
8
*93 In the summer of 1937 and prior to August 31, 1937, Charles, Jennie, and Ernest Goodwin held consultations with their attorney, their accountant, and with other stockholders. They concluded that a partnership form of doing business would result in a savings in taxes. At this time, there was a $99,000 damage suit pending against the corporation. It was decided that the corporation, The Sunray Stove Company, should continue in existence, but that a partnership should be formed to carry on the business under the name Sunray Stove Company. The Sunray Stove Company was located at Delaware, Ohio. On August 31, 1937, a special meeting of the stockholders of the corporation, pursuant to notice to all of such stockholders, was held at the office of the corporation. The following is from the minutes of that meeting: "Mr. Goodwin the President of the Company, stated in substance that the meeting was called for the purpose of selling out the operating part of the Company and its manufacturing business to a partnership to be composed of C. F. Goodwin, Jennie Goodwin and E. S. Goodwin, and to have the Company furnish a building, machinery and equipment to operate the business, and that the partnership *94 would pay $15,000.00 per year as rental therefor. "The proposition was discussed by the shareholders present, and thereupon the following resolution was offered, to-wit: 'WHEREAS, Some of the shareholders of the Company, in their judgment, believe that it would be for the best interests of the Company to sell out the operating and manufacturing part of the Company's business, and thereby get away from the uncertainty of the manufacturing business, and WHEREAS, C. F. Goodwin, Jennie Goodwin and E. S. Goodwin have formed a partnership among themselves for the purpose of purchasing the operating and manufacturing part of the business of this Company. THEREFORE, BE IT RESOLVED, That this Company sell, assign and transfer to C. F. Goodwin. Jennie Goodwin and E. S. Goodwin, the partnership aforesaid, all prepaid insurance policies, sales tax and inventory [sic] on supplies, amounting to $72,709.83, and that the Company in consideration of the aforesaid, enter into a lease with said partnership above mentioned for its building, machinery and equipment, and that said lease shall provide that said partnership shall pay to this Company $15,000.00 per year as rental therefor, and that said *95 lease shall be for a period from year to year, or such time as the Directors in their discretion, deem for the best interests of the Company, and BE IT FURTHER RESOLVED, That the Directors of this Company be, and they hereby are authorized and directed to cause the proper officers of the Company to enter into the agreement set forth in this resolution, and to do all things necessary to consummate and carry out the spirit and intention of this resolution.' "It was moved and seconded, that the foregoing resolution be adopted, and on being put to a vote, was unanimously carried by all of the Shareholders voting in the affirmative." Thereafter, and on the same day, a special meeting of the board of directors of the corporation was held. The following is from the minutes of that meeting: "The Chairman stated that the object of the meeting was to carry out the resolution introduced at the Shareholders' meeting this day held, and thereupon the Minutes of the Shareholders' and resolution adopted by the Shareholders at their meeting on August 31, 1937, was read. "Thereupon the following resolution was introduced by E. S. Goodwin: "WHEREAS, The Stockholders of The Sunray Stove Company *96 have ordered and instructed the Directors of this Company to cause to be sold, assigned and transferred to a partnership, consisting of C. F. Goodwin, Jennie Goodwin and E. S. Goodwin, the prepaid Ohio Sales Tax, prepaid insurance and all miscellaneous supplies, and all raw material and goods in the process of manufacture located in the Plant of this Company in the City of Delaware, Ohio, for a consideration of $72,709.83, which consideration is to be paid in equal shares by said partners by the delivery to said Company of three separate nonnegotiable notes. Each note to be for one-third of the total consideration, and BE IT FURTHER RESOLVED, That a lease for the building of this Company in Delaware, Ohio, and all of the appurtenances thereto, and the machinery, equipment, furniture and fixtures located therein be leased to said partnership on a year to year basis for a consideration of $15,000.00 per year, payable in equal monthly installments of $1250.00 per month, and BE IT FURTHER RESOLVED, That the President and the Secretary of this Company be, and they are hereby authorized, directed and instructed to sign, execute and deliver to said partnership a Bill of Sale in compliance *97 with this resolution, and that the President and Secretary of this Company are further authorized and instructed to execute and deliver to said partnership a lease in conformity with this resolution, which lease shall run for one year, and from year to year thereafter, on the terms as to rental as set out in this resolution. It was moved and seconded that the foregoing resolution be adopted. A roll call was had thereon, and each Director voted in the affirmative. There being no votes cast in the negative, the Chairman declared said notion cattied [sic] and said resolution adopted. A memorandum of a partnership agreement was drafted, but no partnership agreement was signed by petitioners and E. S. Goodwin. Neither was the memorandum of an agreement signed by the parties. A draft, which petitioners have called a "work-sheet" at various times, stated that the "term of this partnership shall be for the period of one (1) year". There was inserted above "one (1) year" on the memorandum or "work-sheet" the word "two (2)," and above that the word "three (3)". It would be continued for more than one year if it were satisfactory. There was an understanding that the alleged partnership would *98 carry on the business which had been conducted by the corporation in the manufacture and sale of stoves under the firm name of Sunray Stove Company; that Charles and Ernest Goodwin would devote all of their time and skill to the business and would perform the same services as they had performed for the corporation; that Jennie Goodwin would not be required to devote any of her time to the business; that the contributions to the capital of the alleged partnership would be as follows.. C. F. Goodwin, $64,236.61; E. S. Goodwin, $42,736.61; and Jennie Goodwin, $38,201.61; and that profits and losses should be equally divided. On August 31, 1937, the corporation, acting through C. F. Goodwin, president, and Julius Nocker, secretary, executed a lease, as "lessor," with Sunray Stove Company, described as a partnership, as lessee. The lease was for a term of one year. The lessor leased certain described property, located in Delaware, Ohio, real estate, plant, factory, office space, and all of the appurtenances thereon, and the machinery, equipment, tools, furniture and fixtures therein and thereon, for an annual rental of $15,000, payable at the rate of $1,250 per month. The lease contains *99 a clause whereby the lessor "licenses and empowers" the lessee to manufacture any articles which it had heretofore manufactured or had the right to manufacture, "by any arrangement, agreement or control with anyone whomsoever during the term of this lease, and to sell said articles so manufactured throughout the United States during the term of this lease, whether or not letters patent of the United States have been applied for or granted, covering any said article or any improvement therein." The lease contains another clause under which the lessor granted to the lessee during the term of the lease, "the sole and exclusive right to use any trade name or trade mark which said Lessor may own or have the right to use * * * in connection with the manufacture or sale of any article to be manufactured in the premises * * * or sold by the lessee." The lease was signed by petitioners and E. S. Goodwin as partners. On August 31, 1937, the corporation, through its president and secretary, executed a bill of sale, under which the corporation sold to petitioners and E. S. Goodwin, "doing business in Delaware, Ohio, as partners under the firm name of Sunray Stove Company," the following: (a) *100 Prepaid Ohio Sales Tax in the sum of $11. (b) Prepaid insurance in the sum of $1,100. (c) Miscellaneous supplies valued at $100. (d) All raw material and foods in process of manufacture located at the plant in Delaware, Ohio, of the aggregate value of $64,613.71. (e) All finished goods in said plant of the value of $6,885.12. Total of above item, $72,709.83. In the bill of sale, the corporation, the grantor, agreed to lease to the grantee the plant, factory and office space, and the machinery, equipment, tools, furniture and fixtures then used in the conduct of the business for a term of one year. The consideration was stated to be $72,709.83, and it was provided that such sum should be paid by three separate non-negotiable notes, each for one-third of the amount, of C. F. Goodwin, Jennie Goodwin, and E. S. Goodwin. The bill of sale was executed by petitioners and E. S. Goodwin as partners. No partnership agreement or articles of copartnership relating to the alleged partnership of August 31, 1937, among petitioners and the brother was ever filed in any state or county office in Ohio, but on November 16, 1937, a certificate of partnership was filed with the Clerk of Common *101 Pleas Court of County of Delaware, Ohio, certifying that petitioners and E. S. Goodwin were interested as partners in the partnership transacting business under the firm name Sunray Stove Company, which certificate was signed by the above parties on September 30, 1937. The bank where the corporation had its account was notified of the change to a partnership, as was the Ohio Workmen's Compensation Division and the Ohio Unemployment Compensation Commission. A Social Security Return, I. R. Form 940, was marked as the return of a partnership. No general notice of the alleged change to a partnership form of carrying on the business was given "because of various business reasons," but some people who had the confidence of petitioner were told about the partnership and so were some employees. The alleged partnership continued to use supplies of stationery of the corporation. Sometimes the word "The" was stricken from the name of the firm. Hereinafter The Sunray Stove Company is referred to as the corporation, and Sunray Stove Company is referred to as the alleged partnership or as Sunray. On September 1, 1937, books were set up for the alleged partnership. At the same time, a checking *102 account was opened in its name with The Delaware County National Bank, at Delaware, Ohio. The corporation had its bank account in the same bank. On the books, capital accounts were opened in the name of C. F. Goodwin, Jennie Goodwin, and E. S. Goodwin, and drawing accounts were opened for C.F. and E. S. Goodwin. Appropriate bookkeeping entries were made on the books of the corporation and on the books of the alleged partnership to transfer the $72,709.83 of raw material, inventory, and prepaid items. C. F. Goodwin. E. S. Goodwin, and Jennie Goodwin executed notes in the amount of $24,729.42, each, payable to the corporation and due in one year. The notes, executed August 31, 1937, bore 6 percent interest. On the corporation books, the notes were carried in a notes receivable account. On March 15, 1938, all of the notes were paid. C. F. Goodwin and Jennie Goodwin drew their respective checks on their joint checking account at the Ohio National Bank, payable to the corporation, in the amount of $25,034.42, of which $305 was credited as interest on the notes. Like payment was made by E. S. Goodwin. On March 14, 1938, the three parties withdrew $25,000, each, from the alleged partnership, *103 said amounts being charged against their respective capital accounts. The above described notes were paid by withdrawals of earnings from the alleged partnership. On September 3, 1937, and September 13, 1937, deposits of $8,000, and $40,000 were made in the bank account of the alleged partnership. The corporation issued its check for $8,000, payable to Sunray Stove Company, and another check for $40,000, payable to C. F. Goodwin, and both checks were deposited in the above account. On the partnership books, the capital accounts of C. F. Goodwin and Jennie Goodwin, respectively, were credited with $8,000 and $40,000. With respect to the $40,000 item, C. F. Goodwin repaid the corporation $11,675 by check on his own bank account on November 4, 1937, so that the difference in the amount of $28,325 represented the net cash transferred by the corporation to the alleged partnership, which represented salary, bonuses, and unwithdrawn dividends owed to him by the corporation. On August 31, 1937, there was a credit balance in Jennie Goodwin's dividends payable account on the books of the corporation in the amount of $13,965. The above mentioned check of $8,000 was presumably charged as a *104 withdrawal by Jennie Goodwin against that balance in her favor. On September 30, 1937, the corporation issued its check payable to her, in the amount of $5,965, the then credit balance in the account. She endorsed this check and it was deposited in the account of the alleged partnership, and her capital account on the partnership books was credited with that amount. On October 4, 1937, E. S. Goodwin drew his check in favor of Sunray Stove Company, in the amount of $18,500, and his capital account on the books of the alleged partnership was credited with that amount. Said sum represented earnings of E. S. Goodwin and dividends he had received on his stock in the corporation. During the fiscal year ended August 31, 1938, Charles and Ernest Goodwin each withdrew $33,500, and Jennie Goodwin withdrew $26,000. On August 31, 1938, each capital account was credited with $54,479.98, which amount represented the distributive share of partnership profits. On August 31, 1938, after crediting the distributive share of profits and debiting the withdrawals to the capital accounts, the capital account of Charles Goodwin showed a balance of $85,216.60, that of Jennie Goodwin a balance of $66,681.59, *105 and the capital account of Ernest Goodwin showed a balance of $63,716.59. After August 31, 1937, the only business of the corporation was the holding of title to properties, machinery, equipment, and tools, all of which had been leased to Sunray Stove Company. The business was carried on under partnership form just as it had been conducted by the corporation, C. F. Goodwin and E. S. Goodwin performing the same services. There were five or six office employees, ten or twelve salesmen, and about 115 factory employees in addition to a factory superintendent and several department foremen. Sunray Stove Company filed a partnership return for the fiscal year September 1, 1937 to August 31, 1938, in which it was stated that it was organized on September 1, 1937. The total income reported was $260,284.81, as follows: 1. Gross receipts from business
$821,813.28
2. Less cost of goods sold: (a) Inventory at beginning of year
$495,354.20
(b) Merchandise bought for sale
117,006.51
(d) Total of lines (a) and (b)
$612,360.71
(e) Less inventory at end of year
45,326.62
567,034.09
3. Gross profit from business
$254,779.19
12. Other income
5,505.62
13. Total income
$260,284.81
*106 Deductions were taken on the return in the total amount of $96,844.86. The net income reported was $163,439.95. That amount was the net distributable earnings of the alleged partnership for the fiscal year ended August 31, 1938. During the fiscal year September 1, 1937 to August 31, 1938, C. F. Goodwin and E. S. Goodwin drew the same amount each month under their drawing accounts. Each withdrew $1,000 a month for the first six months and $250 per month for the last six months, or a total of $7,500 each. At the end of the fiscal year, said amount was charged against the capital account of each. After the close of the fiscal year ending August 31, 1938, E. S. Goodwin advised C. F. Goodwin that he intended withdrawing from the business, and he withdrew at the end of January in 1939. On September 30, 1938, he withdrew $25,000 of the balance in his capital account, and on December 31, 1938, he withdrew $38,716.59, the remainder. Thereafter the balance in his drawing account was zero. He continued to draw out the sum of $250, monthly, which was charged to his drawing account, for the months September to December 1938, inclusive, and January, 1939. The total of such monthly withdrawals *107 was $1,250. That amount was not debited to his capital account until August 31, 1939, at the same time that the capital account was credited with $8,000, representing the share of E. S. Goodwin in the profits of the alleged partnership from September 1, 1938 to February 1, 1939. Also, on August 31, 1939, a debit was made to the capital account in the amount of $6,750, which is explained hereinafter. That debit, plus the debit of $1,250, offset the credit to the account of $8,000 and closed out the account. E. S. Goodwin and his wife also withdrew from The Sunray Stove Company, the corporation. At the end of 1938, the 352 1/2 shares of stock in the name of Lucy Goodwin had not been fully paid for. Under arrangements made with C. F. Goodwin, petitioner, they were to dispose of their stock at the same price per share as they had acquired it, or $100 per share. E. S. Goodwin received payment for his stock from the Goodwins. He did not know just who purchased his stock because it was "sort of a family affair". Lucy Goodwin had given C. F. Goodwin a note for the price of the stock. That note was cancelled when she withdrew from the corporation and surrendered her stock. Since June, 1939, *108 E. S. Goodwin has conducted his own stove manufacturing business under the name of Columbus Stove Company. It was arranged for petitioner's daughter, Frances Goodwin, to become a member of the alleged partnership after E. S. Goodwin withdrew. The plan was as follows: (1) Frances was to "purchase" the interest of E. S. Goodwin for $6,750, the balance due him out of the $8,000 of earnings and profits which was estimated to be his share thereof from September 1, 1938 to February 1, 1939 by Julius Nocker, the accountant in the business. Nocker made this estimate after the beginning of 1939, advising E. S. Goodwin on March 29, 1939, in a letter which asked him to note his acceptance as of January 6th or 7th. Frances sent a letter to E.S., dated January 5, 1939, advising him that the total settlement for his interest was $8,000. She executed a note payable to E. S. Goodwin, dated January 5, 1939, in the amount of $6,750. The note was a joint note signed by C. F. Goodwin and Frances Goodwin. It did not bear interest. (2) The second step in the plan was to create a new partnership to consist of petitioners and Frances. On February 15, 1939 those three persons signed a certificate of partnership *109 stating that they were interested as partners in the partnership transacting business under the firm name of Sunray Stove Company. The certificate was filed with the Clerk of the Court of Common Pleas of Delaware County, Ohio. Also, the above three persons executeda document dated February 15, 1939, entitled "Articles of Copartnership". The document consists of two pages, the second being numbered as page five. It is an incomplete document. On the first page appear the captions Article I, to Article IV, and on the next page, page five, appears the caption "Article XIV". On the first page it is stated that the three named persons have agreed to become partners under the firm name Sunray Stove Company; that Charles F. Goodwin, General Manager, shall contribute to the capital of the partnership the sum of $39,216.60; that Jennie Goodwin shall contribute $31,681.59; and Frances Goodwin shall contribute $8,000; that all of them shall devote their time and skill to the business, "as deemed advisable". The next page, page five, provides that each party is to have an equal share of the profits, and that the term of the partnership shall be for the period of three (3) years from date, "unless *110 sooner terminated or dissolved by consent * * *". (3) Frances Goodwin became a member of the board of directors of the corporation. She was a member in January of 1939. On February 15, 1939, the corporation, as lessor, and Sunray, the partnership, as lessee, entered into a new lease. Petitioners and Frances Goodwin signed the lease as "partner" in each instance. The lease was for a term of three years. The terms of the new lease were the same in all essential respects as the terms of the earlier lease, dated August 31, 1937. The the partnership for an annual rental of $15,000, corporation leased its property and equipment to as before. The earlier lease was for a term of one year. No other lease was executed in the intervening period. After E. S. Goodwin withdrew from the alleged partnership, the business continued as before. There was no formal closing of books and opening of new accounts. As of December 31, 1938, the balances in the capital accounts of C. F. Goodwin and Jennie Goodwin were $39,216.60 and $31,681.59, respectively. (See above reference to their contributions to the capital of the new partnership). These accounts were not closed but were maintained as before. In *111 January of 1939, Frances Goodwin was 21 years of age and she was a student at Ohio State University. She graduated in June, 1939. From January to June of 1939, Frances visited the factory on Saturdays. Sometimes she did a little typing. Her father talked to her about the business at home during evenings and when she visited the plant. After her graduation, Frances went to New York as a representative of Ohio State University at the Elgin Watch Company exhibit at the World's Fair. She received $150 from the Elgin Watch Company as compensation for services, which she reported in her 1939 return. She was in New York for about six weeks. She returned to her home in Ohio, thereafter, where she remained for about one month. During that time she went to the offices of the company every day where she did typing and filing, and sometimes she entertained customers, salesmen and dealers. Thereafter, she returned to New York City where she was employed from time to time as a fashion model working through the John Roberts Powers Agency. She stayed in New York about two months at a time. During 1940 she earned $525, gross, and $244, net, as a fashion model. While there she did some "shopping", *112 visiting stores to observe their displays of stoves, including those of Sunray. As of August 31, 1939, a capital account was opened in the books of Sunray in the name of Frances Goodwin with a debit of $8,500 and a credit of $6,750. On August 8th and August 28th, Sunray issued two checks payable to Frances in the respective amounts of $500 and $8,000. The above debit to her capital account covered these checks. Frances deposited these checks in her bank account with Huntington National Bank at Columbus. On August 31, 1939, she drew a check on that account payable to Ernest S. Goodwin in the amount of $6,750, and the note of Frances and C. F. Goodwin was marked "paid" on September 1, 1939. The capital account of E. S. Goodwin had a credit balance of $6,750 on August 31, 1939. That account was closed by a debit of that amount. A credit of the same amount was made to the capital account of Frances. The net distributable earnings of the business for the fiscal year ended August 31, 1939, were reported on the partnership returns as $187,809.09. This amount was credited to the capital accounts on August 31, 1939, as follows: E. S. Goodwin
$ 8,000.00
Frances Goodwin
54,603.03
C. F. Goodwin
62,603.03
Jennie Goodwin
62,603.03
Total
$187,809.09
*113 In the partnership return of Sunray for the fiscal year ended August 31, 1939, gross profit of $286,479.14 was reported which was computed in the following way: 1. Gross receipts from business
$1,042,679.09
2. Less cost of goods sold: (a) Inventory at beginning of year
$ 45,326.62
(b) Merchandise bought for sale
630,565.72
(c) Cost of labor, supplies, etc.
129,851.19
(d) Total
$805,743.53
(e) Less inventory at end of year
49,543.58
756,199.95
3. Gross profit from business
$ 286,479.14
Other income was reported in the amount of $9,608.92, making total income $296,088.06. Deductions on the return totalled $108,278.97, leaving the net income as shown on the return $187,809.09, as to which there is no controversy. During the above fiscal year the total withdrawals of C. F. Goodwin, charged against his capital account were $73,950, which included $2,750 for monthly drawings in his drawing account at the rate of $250 per month for 11 months. After the credit to the capital account of $62,603.03, the balance as of August 31, 1939 was $73,869.63. During the above fiscal year the capital account of Jennie Goodwin was debited for withdrawals with the total sum of *114 $57,700, and after the credit of $62,603.03, the balance in the account as of August 31, 1939 was $71,584.62. As of August 31, 1939, the balance of the capital account in the name of Frances Goodwin was $52,853.03. She received a net amount in cash, after paying $6,750 to E. S. Goodwin, of $1,750. From about September of 1939 to March of 1940, Frances Goodwin lived in New York City most of the time. In March of 1940, she took a two months cruise to South America. Upon her return she lived in New York City, the Barbizon Hotel being her address according to her bank statement from July of 1939 to January 12, 1942. On July 19, 1941, she married Gustafson. After her marriage she did not live in or near Columbus, Ohio. As of August 31, 1941, Frances withdrew from the alleged partnership. Arrangements were made for her sisters, Dorothy and Ruth, to become members of an alleged new partnership with petitioners as of September 1, 1941, as will be set forth hereinafter. The document dated February 15, 1939, referred to above, purported to create a partnership consisting of petitioners and Frances for a term of three years. The period February 15, 1939 to August 31, 1941, during which Frances *115 was allegedly a member of a partnership, was two and one-half years. The partnership return for Sunray for the fiscal year ended August 31, 1940, reported gross profits of $303,572.56, as follows: 1. Gross receipts
$1,039,348.84
2. Less cost of goods sold: (a) Inventory at beginning of year
$ 49,543.58
(b) Merchandise bought for sale
612,517.71
(c) Cost of labor, supplies, etc.
124,860.66
(d) Total
$786,921.95
(e) Less inventory at end of year
51,145.67
735,776.28
3. Gross profit from business
$ 303,572.56
Total income, including $10,763.36 from other sources, was reported as $314,335.92, and after deductions of $113,204.87, the ordinary net income was reported as $201,131.05. The parties have stipulated that the latter amount represented the net distributable earnings for the year. The partners' share of net earnings were stated to be $67,043.68, each, on the return. However, on the books, the credits to each in their respective capital accounts were $67,054.13, as of August 31, 1940. During the above fiscal year period, the debits to the capital accounts for withdrawals were as follows: C. F. Goodwin, $79,760.45; Jennie Goodwin, $73,010.46; Frances Goodwin, *116 $56,010.45. During the above period, C. F. Goodwin withdrew $2,750, at the rate of $250 per month for 11 months. As of August 31, 1940, the balance in the capital accounts of C. F., Jennie, and Frances Goodwin, respectively, was $61,163.31, $65,628.30, and $63,896.72. On the partnership return of Sunray for the fiscal year ending August 31, 1941, a gross profit was reported in the amount of $302,618.94, as follows: 1. Gross receipts
$1,177,135.44
2. Less cost of goods sold: (a) Inventory at beginning of year
$ 51,145.67
(b) Merchandise bought for sale
708,187.35
(c) Cost of labor, supplies, etc.
162,361.40
(d) Total
$921,694.42
(e) Less inventory at end of year
47,177.92
874,516.50
3. Gross profit from business
$ 302,618.94
Income of $10,143.03 from other sources made the total income $312,761.97, and after deductions of $109,139.30, the net income reported was $203,622.67, which the parties have stipulated was the amount of the net distributable earnings for the period. On the return, the partners' shares were stated to be $67,874.22, each, and that sum was credited to each capital account as of August 31, 1941. The debits to the capital accounts for the *117 above period for withdrawals were as follows: C. F. Goodwin, $13,000, including $3,000 for monthly withdrawals at the monthly rate of $250; Jennie, $10,000; Frances, $20,000. As of August 31, 1941, the balance in the respective capital accounts of C. F. Goodwin, Jennie, and Frances, was $116,037.54, $123,502.52, and $111,770.94. On September 30, 1941, C. F. Goodwin withdrew $50,000, which left a balance in his capital account of $66,037.54; and Jennie withdrew $60,000 which left a balance in her capital account of $63,502.52. On September 30, 1941, Sunray issued its check payable to Frances Goodwin in the amount of $71,770.94, leaving a balance of $40,000 in her capital account. She deposited the check in her account at The Huntington National Bank of Columbus, Ohio. On September 1, 1941, an instrument entitled "Articles of Copartnership" was executed by petitioners and Dorothy and Ruth Goodwin. The instrument purported to create a partnership of the above persons for a period of three years. It was stated that the parties contributed to the capital of the partnership as follows: C. F. Goodwin, $66,037.54, the then balance in his capital account; Jennie, $63,502.52, the then balance *118 in her capital account; and Dorothy and Ruth, $40,000. It was provided that each party would devote as much of his skill and time to the business as deemed advisable; that C. F. Goodwin could withdraw $250 per month; that the profits should be shared equally, one-third to C. F.; one-third to Jennie; and one-third to Dorothy and Ruth. The instrument consisted of five pages, and was signed by the four persons. The arrangement whereby Dorothy and Ruth purportedly acquired the interest of Frances in the business was as follows: The capital account of Frances was closed out after a debit entry of $40,000, and capital accounts in the name of Dorothy and Ruth were opened with a credit of $20,000 in each account. Dorothy and Ruth gave Frances their notes for $20,000, each, payable September 1, 1942, at the rate of 2 percent interest. Jennie Goodwin was a comaker of each note. In March of 1942, Dorothy and Ruth each withdrew $20,000. Frances received $10,000 from each sister, as payment on their notes, and at present the balance due on each note is $10,000. In September of 1941, Dorothy and Ruth were 21 and 19 years of age. Ruth was a student at Ohio State University. Although a new *119 partnership was allegedly created in 1941, there was no formal closing of the books. As of September 1, 1941, The Sunray Stove Company, the corporation, executed a new lease to Sunray, which C. F., Jennie, Dorothy, and Ruth signed as partners. The lease was the same as the prior lease. It was for a term of three years. It was cancelled as of August 29, 1942. Minutes of the corporation's directors dated August 29, 1942, state that Sunray had been obliged to discontinue manufacturing because of Government regulations of critical materials. On October 20, 1941, petitioners and Dorothy and Ruth signed a Certificate of Partnership which was filed with the Clerk of the Court of Common Pleas of Delaware County, Ohio. During the entire period that Frances was allegedly a member of the partnership she withdrew a total net amount of $149,531.39, excluding the $6,750 which she paid to E. S. Goodwin. She had a checking account in The Huntington National Bank of Columbus. On December 31, 1938, the balance in that account was $1,155.94. She deposited in the account all of the checks of Sunray made payable to her in the total sum of $156,281.39. On January 12, 1942, the balance in the checking *120 account was $1,763.47. During the period from December 31, 1938, to January 12, 1942, she made deposits in the account from other sources in the total amount of $5,946.65. In her income tax returns for the years 1939, 1940, and 1941, she reported income from the following sources: Dividends of the Sunray Stove Company, the corporation, $4,511; interest, $250.32; salaries and compensation for personal services, net, $394. She also reported a total amount of $185,520.94 as income from the alleged partnership, being the distributable shares shown on the partnership returns. The total amount of income tax as reported due by Frances on her returns for 1939, 1940, and 1941, was $68,793.64. During 1940 and 1941, she paid the 1939 and 1940 income tax as reported in the total amount of $36,333.98 by checks drawn on her Huntington Bank account. She also purchased, during 1939, 1940, and 1941, with checks drawn on the above account, United States Savings and Defense bonds and a United States Treasury bond at a total cost of $82,010.07. The total face amount of these bonds is $106,000. Prior to her marriage in 1941, Frances purchased Government bonds in the face amount of $34,000. There was *121 in this group a United States Treasury bond for $10,000. Of the $24,000 of savings bonds, one $10,000 bond was issued in the name of "Frances" only. Bonds in the face amount of $7,000 were issued in the names of "Frances or Dorothy", and another $7,000 of bonds were issued in the names of "Frances or Ruth". Subsequent to her marriage, Frances purchased United States Defense bonds in the total face amount of $72,000, at a total cost of $53,330. Bonds having a total face value of $8,000 were issued in the name of Frances Goodwin Gustafson, one bond for $3,000 being payable on death to Dorothy. Bonds in the face amount of $33,000 were made payable to Frances or Dorothy; and bonds in the face amount of $34,000 were made payable to Frances or Ruth. Frances kept the Government bonds in a joint safety deposit box of her mother and father, petitioners, in an envelope marked with her name. All of the sums withdrawn from Sunray by Jennie Goodwin were deposited in a joint bank account standing in her name and the name of C. F. Goodwin. In determining the deficiencies in the income tax liability of petitioner Charles F. Goodwin, Docket No. 3344, for the years 1939, 1940, and 1941, respondent *122 made the following adjustments. He included in the income of petitioner from Sunray for the year 1939, the partners' shares which were reported by E. S. Goodwin and Frances Goodwin in their separate returns for 1939, in the respective amounts of $8,000 and $54,603.03, thereby increasing the income of C. F. Goodwin for 1939 by the total amount of $62,603.03. He added to the income of C. F. Goodwin for 1940 and 1941, the amounts of $67,043.69 and $67,874.22, respectively, the partner's share of income from Sunray which Frances Goodwin reported in her returns for 1940 and 1941. Respondent determined that the alleged partnership income of Frances in 1939, 1940, and 1941, was taxable to C. F. Goodwin, petitioner, under the provisions of section 22 (a); also, that the alleged partnership income for 1939 of E. S. Goodwin was taxable to C. F. Goodwin under section 22 (a). Respondent increased the amount of the earned income credit allowable to C. F. Goodwin in each of the years 1939 to 1941, inclusive, in accordance with the provisions of section 25 (a) (3) and ( 4) of the Internal Revenue Code. In Docket No. 3343, petition of Jennie Goodwin, the statement attached to the notice of deficiency *123 stated that, in determining the deficiencies for 1939 and 1941, the respondent held that the earned income credit allowable to Jennie Goodwin was limited to $300 in each year under the provisions of section 185 of the Internal Revenue Code, and section 19.185-1 of Regulation 103. In the partnership return of Sunray for the fiscal year ending August 31, 1939, it was stated that the earned income of Jennie Goodwin was $12,520.61. Jennie Goodwin, in her return for 1939, took an earned income credit of $1,252.06, representing 10 percent of the above amount. The partnership return for the year ended August 31, 1941, did not report any amounts as the earned income of the partners, but Jennie Goodwin in her return for 1941, took an earned income credit of $1,357.48, which, presumably, represented 10 percent of $13,574.84, which she reported as earned net income in schedule E of the return. The services rendered by Jennie Goodwin to Sunray Stove Company, the partnership, were wholly such "helpful" services as a wife could give in a business which was managed and dominated by her husband. She was a housekeeper, a wife, and a mother. Whatever she did was done when the circumstances made her *124 assistance helpful and convenient. She entertained the customers in her home four or five times a month; she attended the Mart in Chicago once a year with her husband; she "shopped" to observe the merchandise of competitors; she discussed stove designs and colors with her husband; and she would go in her car, a Dodge coupe, to the freight station at Columbus to pick up small packages of merchandise to expedite deliveries to the factory at Delaware on an average of eight to ten times a month. She did not receive any salary and she had no drawing account. Jennie Goodwin paid all of the household and living expenses of the family and expenses of the children by drawing funds from the joint bank account of herself and her husband. Jennie Goodwin used the sums she withdrew from her capital account to purchase a piece of real estate and bonds, and to pay taxes. The title to the property is in her name. The bonds stand in her name alone. The services which Jennie Goodwin rendered to the business in 1939 and 1941 were limited to periodic services. She did not devote all of her time to the business. Her services were not worth $12,520.16 in 1939, and $13,573.84 in 1941, and such amounts, *125 part of her share of the profits in the respective years were not her earned income in each year. The reasonable value of her services in 1939 and 1941 was not more than $3,000. E. S. Goodwin contributed capital and services to the business conducted by the corporation, The Sunray Stove Company. He was a bona fide stockholder in the corporation. The corporation sold certain assets to the partnership allegedly created by petitioners and E. S. Goodwin in 1937. E. S. Goodwin contributed one-third of the selling price of those assets by his payment of his note to the corporation. He contributed cash at the time the business was taken over by the firm called Sunray Stove Company. Also, he rendered substantial and valuable services on a full time basis to the business during the period he was associated with the firm. The share of the profits of the business allocated to E. S. Goodwin was owned by him as the result of his services and efforts and his bona fide ownership of an interest in the business called Sunray Stove Company, and $8,000 of the profits of that business for the fiscal year 1939 was his income, owned and earned by him and by his capital investment. Frances Goodwin *126 did not contribute any capital to the business conducted under the name of Sunray Stove Company at any time, and she did not contribute services to the business in any real sense, or sufficient to constitute her the earner of any of the income in question in 1939, 1940, and 1941. Although she received shares of the earnings of the business after February 15, 1939, until her capital account was closed, and deposited them in her own bank account, she did not have unfettered control over the use of all of the funds. Such portion of the total sum she received which she applied to her own use or to the purchase of bonds in her own name she received as a gift from her father. Frances Goodwin was not a member of a bona fide partnership during the period from about January of 1939 to September of 1941. Opinion In the petition of Charles F. Goodwin, Docket No. 3344, there are only two questions raised by the pleadings: One, whether, in the year 1939, petitioner is liable for tax upon $8,000 of the distributable earnings of Sunray Stove Company, an alleged partnership, which amount was said to represent the share of petitioner's brother, Ernest S. Goodwin, for the period September *127 1, 1938, to about February 1, 1939. Two, whether petitioner is taxable in the years 1939, 1940 and 1941 upon income of Sunray in the respective amounts of $54,603.03, $67,043.69, and $67,874.22, which amounts were said to represent the share of petitioner's daughter, Frances, of the distributable earnings of an alleged partnership, a second partnership which was purportedly created on or about February 15, 1939. Petitioner, Charles F. Goodwin, in his petition to this Court, alleged, inter alia, that the Commissioner erred in refusing to recognize the existence of a valid and legal partnership, commencing on August 1, 1937, between Charles F. Goodwin, Jennie Goodwin, and E. S. Goodwin, known as Sunray Stove Company; that the Commissioner erred in changing, for the year 1939, the distributive shares of the partnership income by adding the share of E. S. Goodwin to the share of Charles F. Goodwin; that the Commissioner erred in refusing to recognize the existence of a valid partnership between petitioners and Frances Goodwin as of January 6, 1939, and in failing to give effect to the terms of the written Articles of Copartnership dated February 15, 1939; and that the Commissioner *128 erred in changing, for the years 1939, 1940, and 1941, the distributive shares of the partnership income by adding to Charles F. Goodwin's share the shares of Frances Goodwin in those years. Respondent generally denied these allegations in his answer. Respondent, in determining the deficiencies for the three taxable years, did not attribute to Charles F. Goodwin any of the shares of Jennie Goodwin in the earnings of Sunray. At the opening of the hearing, in these proceedings, counsel for the respondent stated that it was the respondent's contention that the substance and effect of the transactions, insofar as they involved E. S. Goodwin and Frances Goodwin, were "nothing more or less than equivalent to the assignment of the earnings of the partners after they have been produced and earned by the efforts of the other partners, and primarily, the Petitioner, Charles F. Goodwin". Respondent, in his opening statement in referring to the issue presented in the petition of Jennie Goodwin, Docket No. 3343, said that the question turned upon "the measure of degree of the services she has rendered to the partnership, that is, whether they were substantial, * * *". These proceedings *129 were tried upon the understanding of the parties that neither the determination of the respondent, nor the pleadings raised any question about Jennie Goodwin's status. Respondent recognized her as the owner of the shares of the distributable earnings of the business for the three taxable years when he made his determinations of the income tax liability of Charles F. Goodwin and Jennie Goodwin, when he filed his answer to the petitions, and during the trial of these proceedings. The petitioners proceeded to try their cases upon such understanding. Under the pleadings, all of the burden of proof was upon the petitioners, no affirmative allegations having been made by the respondent to place any burden of proof upon him. At the end of the trial, after all of the evidence had been submitted, counsel for the respondent asked for time to consider, after going over the record, whether he should make a motion to amend his answer to conform to the proof and to ask for increased deficiencies for Charles F. Goodwin on the ground that Jennie Goodwin was not a member of any partnership and that the shares of income attibuted to her in the taxable years should be added to the income of Charles F. *130 Goodwin. It was suggested by the Court that any such contemplated motion to amend the answer should be made in writing at the hearing and before the hearing was concluded, subject to the right to withdraw the amendment or to abandon any new matters raised. Counsel for the respondent filed at the hearing a motion to file an amended answer in the proceeding of Charles F. Goodwin, Docket No. 3344, only, and he attached to the motion a proposed amended answer, in which it is affirmatively alleged by the respondent that the evidence adduced by the parties at the hearing establishes that petitioner and Jennie Goodwin were not members of a partnership in any of the fiscal or taxable years involved; that Sunray Stove Company was a sole proprietorship owned and operated by Charles F. Goodwin; that respondent erred in not including in the income of Charles F. Goodwin the one-third of the earnings of the business in each year which were attributed to Jennie Goodwin as a partner, and that the deficiencies in the tax liability of Charles F. Goodwin should be increased to $75,047.04 in 1939, $90,993.72 in 1940, and $93,634.01 in 1941. No action has been taken on respondent's motion. The parties *131 have filed briefs containing arguments on the right of respondent to amend his answer after all of the evidence had been submitted. Consideration is now given to respondent's motion and the arguments made. The motion should be denied because it is untimely. It raises a new issue and presents a new theory. The case was not tried on the theory that Sunray Stove Company was a sole proprietorship conducted and operated by petitioner, Charles F. Goodwin. Respondent, if he had offered to amend his answer at the beginning of the trial, would have had the burden of proving his affirmative pleading. Also, petitioner, Charles F. Goodwin, would have had the opportunity of offering rebuttal evidence. In the trial of this proceeding, respondent did not offer evidence to support the theory that the business in question was conducted as a sole proprietorship. In the proposed amended answer, respondent does not set forth the facts upon which he relies. He asserts, merely, that the evidence adduced, in general, supports his preferred allegation. A review of the record shows that there is absent from the record much which would form the pattern of evidence to support the theory which respondent seeks *132 belatedly to inject into this proceeding. Petitioner cites authorities which support his objection to respondent's motion: Simms v. Andrews, 118 Fed. (2d) 803; California Brewing Association, 43 B.T.A. 721; Fifth Avenue Bank of New York, Executor, 32 B.T.A. 701; Steele-Wedeles Co. v. Commissioner, 63 Fed. (2d) 541. A rule has been stated in Simms v. Andrews, supra, which applies here. "The right to amend pleadings to conform to the proof proceeds upon the theory that by such amendment the pleadings are brought in line with the actual issues upon which the case was tried, even though such issues were not stated in the pleadings as originally drawn." Respondent's motion will be denied contemporaneously with the entry of this report. At the close of the hearing, petitioner, in Docket No. 3344, filed a motion to amend the petition to conform to proof. The motion was taken under consideration. The pleading which petitioner asks leave to amend is sub-paragraph (1) of paragraph four of the petition, appearing upon page three thereof. *133 In that sub-paragraph, petitioner alleged that "The Commissioner erred in failing to give effect to the terms of the written Articles of Co-Partnership dated February 15, 1939, * * *" (under-scoring added). The evidence adduced at the hearing is that the document dated February 15, 1939, petitioner's exhibit fourteen, is an imperfect and incomplete document. Petitioner now seeks to add to the said sub-paragraph in paragraph four, an alternative allegation, as follows: "* * *, or, in the alternative, the Commissioner erred in giving effect to the terms and provisions of an oral agreement of co-partnership made and entered into on or about February 15, 1939, between the petitioner, Charles F. Goodwin, Jennie Goodwin and Frances Goodwin". Respondent, in his brief, does not oppose petitioner's motion, although he made formal objection at the hearing. He states in his brief at page eight, inter alia, that "the burden is upon the petitioner to establish, by competent evidence, not only the existence of either a written or an oral partnership agreement, but that under the terms of such an agreement there was created a bona fide partnership which must be recognized for income *134 tax purposes". Upon due consideration of all of the evidence, petitioner's motion should be granted. It is in accordance with the scope of the evidence and serves to broaden the pleading of petitioner to conform to the proof. Petitioner's motion has been granted. In the petition in Docket No. 3344, it is alleged, inter alia, that respondent erred in changing for the year 1939, the distributive shares of partnership income by adding $8,000 thereof to the income of Charles F. Goodwin, petitioner. Respondent made his determination under the broad scope of section 22 (a). The pleadings, in general, raise the question of whether or not a partnership, which can be recognized for income tax purposes, consisting of petitioners and E. S. Goodwin existed. But the broad question, and the ultimate question, is whether or not Charles F. Goodwin is taxable on $8,000 of earnings of a business, which amount was actually received by E. S. Goodwin, who contributed his full time and services to the business during the period in question. We believe the question should be considered in its broader aspect, in view of all of the evidence material to this issue. E. S. Goodwin, as far as the record *135 shows, was a bona fide stockholder of The Sunray Stove Company, the corporation. He devoted all of his time to the business conducted by the corporation. He and Charles F. Goodwin appear to have run that business together. E. S. Goodwin was a minority stockholder, but the record does not show that he was not, in every sense, an owner of an equitable interest in the assets of the corporation. He received dividends. When he withdrew in the early part of 1939, he received $100,000 in payment for his stock. The arrangements which were made in 1937 were for the purpose of changing the form of the entity conducting the business of manufacturing and selling stoves. Of course, the business was a family controlled business. Petitioners were the majority stockholders of the corporation. In itself, that cannot be a fact which compels us to refuse to recognize the formal steps which were taken, unless there is evidence that proves that the formal steps were a sham and a mere device. There is no evidence to establish that the stockholders of the corporation were not the bona fide owners of the stock standing in their names. Apparently, they were bona fide stockholders, who received *136 and retained dividends, and who, by virtue of stock ownership, owned interests in the assets of the corporation. A corporation is a taxable entity. A well established business had been carried on by the corporation. If the arrangements which were carried out in 1937 did not result in the stated objectives, on of which was to end the conduct of any business by the corporation, then it would follow that the business, in fact, continued to be carried on by the corporation. Respondent has not made any argument that such was the case. But, if it were, could it be said that one of the stockholders, Charles F. Goodwin, was taxable on the profits attributable to Ernest S. Goodwin's ownership of an equity in the business? There is no evidence in the present record which would support such theory. We start, therefore, with the premise that The Sunray Stove Company, the corporation, was a bona fide corporation, and that E. S. Goodwin was a bona fide stockholder. The first question involves E. S. Goodwin and his status as a stockholder is of prime importance. E. S. Goodwin, along with the other stockholders, agreed to the general plan. His acquiescence has not been shown to have been *137 the result of the domination of Charles F. Goodwin. After all, E. S. Goodwin was not a mere employee. He had been in the business for a long time, and he contributed in a real measure to the building up of the business. He had funds of his own, derived from stock dividends and earnings. The formal steps were adequate and the plan was carried out. Perhaps the most important change was that the steps taken resulted in a complete change of the rights of all interested parties to receive shares of the earnings of the business. The annual income of the corporation was reduced to about $15,000, which sharply reduced the source of dividends on stock. Dividends as high as $30 a share had been paid on the stock. Thereafter, the highest dividend was $9 per share. Petitioners and E. S. Goodwin were to share equally, thereafter, in the net profits. They did. From September 1, 1937, to August 31, 1938, E. S. Goodwin received one-third of the earnings, and the record does not show that his receipt thereof was a sham or a subterfuge of any kind. He withdrew a total sum of $97,216.59, which included $7,500 of monthly drawing account items, from September 1, 1937, to December 31, 1938. His final *138 withdrawal of $8,000 was an estimate of his one-third share of profits for a short period. The evidence does not show that this was an unreasonable estimate. When the form of the business was changed to a partnership, E. S. Goodwin paid into the business $18,500 out of his own funds. He contributed as his share of the purchase price of inventory and prepaid items, the sum of $25,034.42. Thus, he contributed to the capital of the business conducted by the alleged partnership. At this point, the only element of doubt is the transaction under which the corporation sold its inventory of goods and certain items to the partnership for $72,709.83. Respondent, in cross-examination, did not go into this matter. The first income tax return filed by the partnership reported the cost of the opening inventory, at the beginning of the fiscal year, at the figure of $495,354.20. Certainly, this great discrepancy between the amount $495,354.20 and $72,709.83 calls for complete explanation. There is none. But, assuming that the inventory was given a bargain price in an obviously family dominated arrangement, that fact is not dispositive of the question as it relates to E. S. Goodwin. Finally, E. S. *139 Goodwin contributed services to the business in equal measure after the arrangements, just as he did before. Here then, the status of E. S. Goodwin, both before and after the 1937 arrangement was that he had put capital into the business; he owned an equitable interest in the business, which was not under the cloud of any dubious gift but was a bona fide ownership resulting from his efforts in earning income and investing it in a business; and, finally, he contributed valuable services to the business. The cardinal rule is that income is taxable to the person who earns it, or who owns property producing the income. Lucas v. Earl, 281 U.S. 111; Cf. Schroder v. Commissioner, 134 Fed. (2d) 346; Burnet v. Leininger, 285 U.S. 136. It is concluded that a partnership existed in which E. S. Goodwin was a member, and that the $8,000 of income for 1939 in question was his share of income, taxable to him. Respondent's determination is overruled. The second question to be considered under Docket No. 3344 relates to the arrangements which were made in January of 1939 by which a daughter of petitioners *140 purportedly became a member of a partnership. The facts have been set forth fully. They disclose a simple situation in which the substance of the arrangement was no more than that in the future one-third of the earnings of the business would be attributed to Frances. The business had been taken out of the corporation. That had been done through the arrangements of petitioners and E. S. Goodwin in 1937. An inventory, the quick assets of the corporation in 1937, had been sold to a partnership. The corporation no longer had title to those assets. In fact, they had disappeared, probably through sales in the form of finished goods. Whatever interest Frances Goodwin, as a stockholder of the corporation, had in the inventory of the assets which left the corporation in 1937 for about $72,000, had been converted into an interest in the proceeds which the corporation received in 1938. Frances did not participate in the 1937 arrangements; she did not contribute any sum to the partnership created in 1937; and, in no respect, does her status as a stockholder of the corporation serve to support any possible view that she, indirectly or directly, made any contribution to the capital of the firm *141 called Sunray at any time, and she clearly did not do so in 1939 when she purportedly became a member of a new partnership with petitioners. In 1939, Frances contributed no property and no capital to the then going concern. She was paid $8,500 by the business known as Sunray and she, in turn, remitted $6,750 to E. S. Goodwin, the balance of his accrued share of the profits of the business. She was no more than a conduit through which that sum was routed to E. S. Goodwin, the owner. Also, Frances contributed no services to the business. Her meagre hours in visiting her father's plant and in running errands, which was what her services amounted to in her "shopping" about, were so unsubstantial that no reasonable claim can be made that she earned any of the income which was allocated to her. Finally, despite the superficial indicia of ownership and control over the large sum which passed into her bank account, to wit, $149,531.39, excluding the $6,750 she passed on to Ernest, she did not have complete control over that income, in fact. Out of it she paid, prior to March 15, 1942, $36,333.98 to the Federal Government in income tax; she used $82,010.07 to pay for Savings and Defense bonds *142 having a face value of $106,000; she had a balance in the account of $1,763.47 on January 12, 1942; unaccounted for is the balance of $29,423.87. The bulk of the above sum of $149,531.39 went out into taxes and bonds. What of the bonds? Only $28,000 face value stood in the name of Frances alone, and $78,000 face value stood in the joint names of herself and a sister. The bonds were kept in the safety deposit box of petitioners, to which Frances had no independent access. Whenever she went to the box she had to go with her mother or her father. Thus, petitioners, in fact, had and could exercise a high degree of control over the bonds. During the lives of both co-owners, the bonds could be paid to either co-owner upon her signature and request alone, without the signature of the other co-owner. See Treasury Department Circular, No. 530, 5th revision, June 1, 1942, as amended May 1, 1944; section 315, 32 (a). Thus, Dorothy or Ruth, alone, could cash the bonds of which they were co-owners with Frances. There is testimony to indicate that petitioner, Charles F. Goodwin, had indicated that the money invested in bonds should not be available to the husband of Frances, which carries a strong *143 implication that he suggested that the bonds should be purchased in the names of co-owners consisting only of his daughters. It is concluded and held that recognition cannot be given to the alleged partnership in which Frances Goodwin was purportedly a member. For income tax purposes, she was not a member of a partnership. It cannot be said, even, that the arrangement constituted an assignment of income to Frances. In reality, all that she received for herself was received through gift and it was substantially less than the large sums credited to her account and transferred to her bank account. The arrangement was not bona fide when the use of the income is considered. Under the most favorable view, there was only an assignment of earnings. Respondent held, properly, that the income which was attributed to Frances was not her income. Respondent determined that such income was taxable to petitioner, Charles F. Goodwin. Petitioners have not made any contention, in the alternative, that such income should be taxed, in part, to Jennie Goodwin. Respondent's determination is sustained in the years 1939, 1940, and 1941. Lucas v. Earl, supra;Burnet v. Leininger, supra; *144 O. William Lowry, 3 T.C. 730; Frank J. Lorenz, 3 T.C. 746; Francis E. Tower, 3 T.C. 396; Earp v. Jones, 131 Fed. (2d) 292, certiorari denied, 318 U.S. 764; Schroder v. Commissioner, supra;M. M. Argo, 3 T.C. 1120. In Docket No. 3343, Jennie Goodwin, petitioner, the only question is whether the credit for earned income was limited properly by the respondent to $300 in 1939 and 1941. As heretofore stated, respondent recognized Jennie Goodwin as the owner of a distributive share of the earnings of the partnership. For the purpose of computing the earned income credit against net income, a member of a partnership is entitled to treat a proper part of his distributive share of the partnership net income as earned income. Such part, however, cannot exceed a reasonable allowance as compensation for personal services actually rendered by the partner in connection with the partnership business. If the partnership is engaged in business in which the capital is a material income-producing *145 factor, and the partner renders personal services which are material to the earning of the partnership income, the earned income of the partner from the partnership is a reasonable allowance as compensation for the personal services actually rendered by him, but not in excess of 20 percent of his share of the net profits of the partnership. However, if the reasonable compensation is less than 20 percent of the partner's share of the net profits, the earned income is the amount of the reasonable compensation. See Regulations 103, section 19.185-1. In her returns for 1939 and 1941, Jennie Goodwin claimed as her earned income, the full 20 percent of her distributive share of the partnership income. The record, however, does not support a finding of fact that a reasonable compensation to her for personal services amounted to $12,520.61 and $13,573.84, respectively, as claimed by her as earned income. The burden of proof upon petitioner to show that her services were such in these years as to result in earnings of the above amounts has not been met. She rendered some services. They were not substantial. There is nothing in the record from which a determination can be made of what her earned *146 income was. For failure of proof, respondent's determination should be sustained. On the record as it stands, the earned income of Jennie Goodwin did not approach the above sums which amount to more than $1,000 per month. Section 25 (a) (3), 4 (c), Internal Revenue Code; Regulations 105, par. 19.25-2; Regulations 101, Art. 25-2. In Docket No. 3343, decisions will be entered that there are deficiencies of $38.09 and $42.30, respectively. In Docket No. 3344, decision will be entered under Rule 50. Because the proceedings have been consolidated, all of the decisions should be entered at the same time. Decision will be entered under Rule 50.